IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **JUAN A. TORRES FIGUEROA,**<br>**Plaintiff**<br><br>v.<br><br>**JO ANNE BARNHART,**<br>**Commissioner of Social Security**<br>**Defendant** | **Civil No. 04-1928(JAF)** |

### REPORT AND RECOMMENDATION

Plaintiff Juan A. Torres-Figueroa (hereafter "Torres") filed a complaint seeking judicial review of the decision of the defendant, Commissioner of Social Security (hereafter "the Commissioner") denying him disability benefits pursuant to 42 U.S.C. § 405(g), Titles II of the Social Security Act (**Docket No. 1**). Torres asks for judgment reversing the decision of the Commission and for an award of disability benefits during the period of disability, or in the alternative to remand for further proceedings. The Commissioner answered the complaint and filed a memorandum of law in support. (**Docket Nos. 5, 8**). Torres also filed a memorandum of law in support of his position (**Docket No. 9**). The matter was referred to the undersigned for a report and recommendation (**Docket Nos. 10**).

After careful review of the administrative record and the briefs on file, this Magistrate-Judge RECOMMENDS that the Commissioner's decision be VACATED and that the matter be REMANDED for further proceedings consistent with this opinion.

**I.     General Background**

Torres was born on September 18, 1946, and has a seventh grade education (Tr. 84, 115, 118). He has past relevant work as a sales route driver (Tr. 103, 105-107). Torres seeks disability

insurance benefits alleging an inability to work for the closed period from May 31, 2002 to June 31, 2003, due to diabetes, retinopathy and hypertension (Tr. 83, 96, 100).

Torres's application for social security benefits was filed on June 27, 2002, alleging an inability to work since May 31, 2002 (Tr. 84-86). He was denied benefits initially and upon reconsideration (Tr. 42-54, 60-71). An administrative hearing was set for May 11, 2004, but Torres waived his right to testify at the hearing and the case was decided upon the evidence of record (Tr. 218). Thereafter, on May 24, 2004, Administrative Law Judge Solomon Goldman (hereafter "ALJ") found that Torres was not disabled pursuant to the Social Security Act (Tr. 23-27). Torres filed a Request for Review of the Hearing Decision, but the Appeals Council rejected his request and affirmed the ALJ's decision, rendering it the final decision of the Commissioner of Social Security (Tr. 5-7).  Torres now challenges the Commissioner's decision.

## II.     Discussion

### A.     Legal Standard

At issue is whether the Commissioner's decision is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. 405(g); *Richardson v. Perales,* 402 U.S. 389, 399 (1971). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nieves v. Secretary of Health and Human Services,* No. 91-2273, 1993 WL 126029 at *2 (D.P.R. Jan. 28, 1993) (citing *Universal Camera v. N.L.R.B.,* 340 U.S. 474, 477 (1951)). The Commissioner has the duty of weighing the evidence and resolving material conflicts with testimony.  *See Richardson,* 402 U.S. at 400; *González-García v. Secretary of Health and Human Services,* 835 F.2d 1, 3 (1st Cir. 1987).  Accordingly, the Court  "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different resolution, so long

as it is supported by substantial evidence." *Rodríguez-Pagán v. Secretary of Health and Human Services,* 819 F.2d 1, 3 (1st Cir. 1987).

To establish entitlement to disability benefits, the burden is on the claimant to prove that he is disabled within the meaning of the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 146-47, n. 5 (1987). It is well settled law that a claimant is disabled under the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant is unable to engage in any substantial gainful activity when the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(A). Also, the impairment must have arisen prior to the date that his insured status expired. *See Torres v. Secretary of Health and Human Services*, 845 F.2d 1136, 1138 (1st Cir. 1988); *Cruz-Rivera v. Secretary of Health and Human Services*, 818 F.2d 96 (1st Cir. 1986).

In making a determination as to whether a claimant is disabled, all of the evidence in the record must be considered. 20 C.F.R. § 404.1520(a). A five-step sequential evaluation process must be applied to every case in making a final determination as to whether a claimant is disabled. 20 C.F.R. §§ 404.1520; *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Goodermote v. Secretary of Health and Human Services*, 690 F.2d 5, 6-7 (1st Cir. 1982). Through step one the ALJ determines whether the claimant is engaged in "substantial gainful activity." If he is, disability benefits are denied.

§§ 404.1520(b). If he is not, the decision-maker proceeds to step two, through which he determines whether the claimant has a medically severe impairment or combination of impairments. *See* §§ 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment or combination of impairments is severe, the evaluation proceeds to the third step, in order to determine whether the impairment or combination of impairments is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. §§ 404.1520(d); 20 C.F.R. pt. 404, subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is conclusively presumed to be disabling, the evaluation proceeds to the fourth step, through which the ALJ determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. §§ 404.1520(e). If the claimant cannot perform this work, the fifth and final step of the process demands a determination on whether the claimant is able to perform other work in the national economy in view of his residual functional capacity, as well as his age, education, and work experience. The claimant is entitled to disability benefits only if he is not able to perform other work. §§ 404.1520(f).

   The claimant has the burden, under steps one through four, of proving that he cannot return to his former employment because of his alleged disability. *Santiago v. Secretary of Health and Human Services*, 944 F.2d 1, 5 (1st Cir. 1991). Once a claimant has demonstrated a severe impairment that prohibits return to his previous employment, the Commissioner has the burden, under step five, to prove the existence of other jobs in the national economy that the claimant can perform. *Ortiz v. Secretary of Health and Human Services*, 890 F.2d 520, 524 (1st Cir. 1989).

The Court's review is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence. *Manso-Pizarro v. Secretary of Health and Human Services*, 76 F.3d 15, 16 (1st Cir. 1996). The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts. *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999); *Da Rosa v. Secretary of Health and Human Services*, 803 F.2d 24, 26 (1st Cir. 1986); *Ortiz v. Secretary of Health and Human Services*, 955 F.2d 765, 769 (1st Cir. 1991). Substantial evidence has been defined as "more than a mere scintilla" and "such as a reasonable mind might accept as adequate to support a conclusion". *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

Torres' claim is limited to the time of alleged disability, that is; from May 31, 2002, to June 31, 2003.

### B.     Conclusions of Law

The ALJ determined that during the time period in question, the medical evidence indicated that Torres had high blood pressure, and diabetes mellitus with reduced but still adequate visual acuity, with vision reported variable from 20/80 right, 20/40 left to 20/60 right, 20/70 left (Tr. 24). The ALJ did not find Torres' allegations of limitations credible. The ALJ concluded at step five of the sequential evaluation process, that during the relevant time period, Torres was unable to perform his past relevant work, but despite his impairments and visual limitations he could perform a wide range of unskilled work at all exertional levels (Tr. 25). The ALJ used the Vocational Guidelines as a framework to determine that Torres was not disabled within the meaning of the Social Security Act (Tr. 25).

The ALJ made the following findings:

1)  Torres met the nondisability requirements on May 31, 2002, and is insured for benefits through the date of the decision (Tr. 26).

2)  He did not engage in substantial gainful activity during the requested closed period of disability from May 31, 2002 until June 31, 2003. Torres returned to substantial gainful activity on June 31, 2003, which precludes a finding of disability after such date. He is 57 years of age, has a limited seventh grade education and past work experience as a sales route driver (Tr. 26).

3)  During the closed period at issue, Torres had high blood pressure, diabetes mellitus and retinopathy with affected vision. He did not have an impairment or combination of impairments listed in or medically equal to one of the listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 26).

4)  Torres' allegations regarding his limitations are unsupported by the preponderance of the medical and other evidence on records and are not found credible (Tr. 26).

5)  Torres has the residual functional capacity to perform the nonexertional requirements of work except for work requiring keen vision or working with very small objects. Jobs that require constant visual alertness and strain are also contraindicated. There were no exertional limitations (Tr. 26).

6)  Torres is unable to perform his past relevant work that involved excessive driving. He retains the residual functional capacity for work at all exertional levels with certain visual restrictions (Tr. 26).

7)  If Torres' nonexertional limitations did not significantly compromise his ability to perform work at all exertional levels, section 204.00, Appendix 2, Subpart P, Regulations No. 4 indicates that a finding of not disabled would be appropriate. If Torres' capacity to work at all levels were significantly compromised, the remaining work which he would functionally be capable of performing would be considered in combination with his age, education and work experience to determine whether a work adjustment could be made (Tr. 26).

8)  Considering the range of work at all exertional levels, which Torres was still functionally capable for performing, in combination with his age, education and work experience, and using section 204.00 of Appendix 2, Subpart P, Regulations No. 4 as a framework for decision making, Torres was not disabled during the period from May 31, 2002, until June 31, 2003. Substantial gainful activity performed since June 3, 2003, precludes a finding of disability since such date (Tr. 26-27).

9)   Torres was not under a disability as defined in the Social Security Act, at any time through the date of the ALJ's decision (Tr. 27).

Torres argues that the decision of the Commissioner is not supported by substantial evidence taking the record as a whole. More particularly, Torres contends that the ALJ erred in not obtaining the assistance of a vocational expert; and further asserts that the ALJ's findings #7 and #8 are confusing.

**C.      Analysis**

The ALJ applied the Medical Vocation Guidelines (hereafter "Grid") in determining that Torres is functionally capable of performing work at all exertional levels, with certain visual restrictions, based upon his age, education and work experience (Tr. 26-27). He also found that Torres' visual restrictions precluded work requiring keen vision, working with very small objects constant visual alertness and strain (Tr. 26).

The Grid is used to simplify the ALJ's task of determining whether a claimant is able to perform significant gainful work, which is determinative in establishing claimant's disability or non-disability status. *Sherwin v. Secretary of Health and Human Services*, 685 F.2d 1, 2 (1st Cir. 1982). *Id.* The Grid consists of four factors (age, education, work experience, and residual work capacity) that are used to determine the existence of a claimant's disability. *Id.* Furthermore, the Grid has three different tables, one each for residual work capacities, such as "sedentary," "light" and "medium" work. *Id.* The ALJ selects the appropriate row and table depending on the characteristics of the claimant. *Id.* at 3.

The Grid "can only be applied when claimant's non-exertional limitations do not significantly impair claimant's ability to perform at a given exertional level." *Rose v. Shalala*, 34 F.3d 13, 19 (1st Cir. 1994). The presence of significant nonexertional limitations will preclude the Secretary from

exclusively relying on the Grid to resolve the issue of disability. *DaRosa* v. *Secretary of Health and Human Services,* 803 F.2d 24, 26 (1st Cir. 1986); *Burgos-López* v. *Secretary of Health and Human Services,* 747 F.2d 37, 39 (1st Cir. 1984)"If a non-strength impairment, even though considered significant, has the effect only of reducing [the] occupational base marginally, the Grid remains highly relevant and can be relied on exclusively to yield a finding as to disability. *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989). When the Grid is used as a framework, and the reduction of the occupational base is more than marginal, the testimony of a vocational expert is required. *Burgos-López v. Secretary of Health & Human Serv.,* 747 F.2d 37, 42 (1st Cir. 1984). For all that appears in the record, such a testimony was required.

The ALJ found that in spite of Torres' visual limitations, they did not significantly compromise his range of work at all exertional levels. The ALJ used the Grid and specifically referred to Rule 204.00 in making his determination. The ALJ concluded thus, that Torres was not disabled during the closed period. The ALJ further found that there are number of jobs that do not require keen vision, working with small objects or constant eye strain, as in extended reading of small print and prolonged driving. Yet, the ALJ found that Torres' nonexertional visual restrictions resulted in a number of limitations for Torres to face in the work force during the closed period of disability. The ALJ specifically found that Torres could not perform work requiring keen vision; he could not work with small objects; he could not perform jobs that require constant visual alertness; he could not perform jobs that result in eye strain; and he could not perform jobs that require extensive driving. At the very least, based upon the record and the ALJ's findings, Torres' visual restrictions appear to have more than a de minimus effect on Torres' ability to perform work. These visual limitations suggest a reduction in the range of work that could be more than marginal. Accordingly, the use of

the Grid in this case, with no evaluation of the possibility that Torres' identified visual limitations could erode the occupational base, constitutes error by the Commissioner. Indeed, since Torres' vision problems constitutes nonexertional limitation which could potentially affect the range of work he can perform, the exclusive use of the Grid was improper. *See Collado V. Apfel*, 63 F.Supp.2d 152, (D.P.R. 1999). Consequently, reliance solely on the Grid was inappropriate and the testimony of a vocational expert was required.

The ALJ also erred in his consideration of medical records outside the closed period of disability from May 31, 2002 to June 31, 2003, when determining disability. In addition, the ALJ referred to incorrect ranges while describing Torres' visual acuity.

The ALJ refers to Torres' vision as varying from 20/80 right, 20/40 left, to 20/60 right, 20/70 left (Tr. 24). The visual acuity of 20/80 right, 20/40 left, is based upon an examination of July 20, 2000, some two years prior to the beginning of the closed period of disability (Tr. 180). Additionally, the ALJ refers to the improvement of Torres' visual acuity of 20/30 right and 20/25 left (Tr. 24). Those ranges, however, are based upon an examination that took place on March 11, 2004, again a date far outside the closed period of disability.

More so, the ALJ at Exhibit 3F refers to a finding regarding vision acuity of 20/60 right and 20/70 left (Tr. 24). The undersigned has reviewed each page of the record and there is no such finding. A report found Exhibit 3F and dated October 18, 2002, refers to vision acuity of 20/160 right (not 20/60), 20/70 left (Tr. 184). What the record does reflect is that during the closed period for disability, Torres' visual acuity ranged from 20/160 to 20/80 in the right eye and 20/400 to 20/60 in the left eye (Tr. 36, 180, 184). Theses visual acuity ranges were not mentioned by the ALJ. While an ALJ is not required to address all of the evidence in the record, the "ALJ may not simply ignore

relevant evidence, especially when that evidence supports a claimant's cause." *Lord v. Apfel*, 114 F.Supp.2d 3, 13 (D.N.H. 2000). Quite simply, the ALJ erred in relying upon visual acuity examination for dates outside the disability period and appears to have ignored evidence when he determined that Torres had a reduced vision of 20/80 to 20/30 in the right eye and 20/40 to 20/25 in the left eye. The record indicates that Torres' vision was reduced to a greater extent than determined by the ALJ.

### III. Conclusion

For the reasons stated above, this Magistrate-Judge, having scrutinized the record and completed an independent assessment of the evidence, finds that the decision of the ALJ is not supported by substantial evidence. Therefore, this Magistrate-Judge **RECOMMENDS** that the Commissioner's decision be **VACATED** and that this matter be **REMANDED** for further proceedings consistent with this Report and Recommendation.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(a) of the Local Rules of Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within ten (10) days** of notice. Rule 72(d), Local Rules of Court; Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation waives the right to review by the District Court, and waives the right to appeal the District Court's order. *United States v. Valencia-Copete*, 792 F.2d 4, 6 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980). The parties are advised that review of a Magistrate-Judge's Report and Recommendation by a District Judge does not necessarily confer entitlement as of right to a *de novo* hearing and does not permit consideration of issues not raised before the Magistrate-Judge. *Paterson-Leitch v. Massachusetts Elec.*, 840 F.2d 985 (1st Cir. 1988).

Civil No. 04-1928 (JAF)                                                              Page No. 11

**SO RECOMMENDED**.

At San Juan, Puerto Rico, on this 12th day of September, 2005.

                                                      S/**AIDA M. DELGADO-COLON**
                                                       **U.S. Magistrate-Judge**